Good morning, may it please the court. With me today at council table is my partner Jocelyn Mazzoloni, also present before the court is Matthew Akiba, who did a lot of the briefing. In our case, congressional intent is clear. Congress went out of its way to provide a unique path to removal, an immediate right to an appeal, and a mandatory stay during the course of that appeal. The test is very simple and the bar is low. Congress favors arbitration. If a controversy is related. I'm not sure we have jurisdiction because of 1447 D. Yes, your honor. I believe you do have jurisdiction. There was never a 1447 D analysis performed in the district court's order. So it's unclear the basis for the remand. Didn't the district court specifically state that it was reviewing the jurisdictional prerequisites on them to be wanting? She applied different jurisdictional prerequisites. Let me be clear. I'm not saying that what the district court did was right here. I'm not saying that. But I'm asking you, didn't the order say that the district court was looking at the jurisdictional prerequisites, found them to be wanting, and finding no other jurisdictional hook remanded? That's what the order said. Isn't that a determination regarding subject matter jurisdiction? And doesn't that take us to 1447 D? I don't think so. I don't think necessarily. I think under the Maxwell case, it says that this is a question of a forum selection clause which would be an exception. Well, I mean, that's an unpublished decision. Now, you have the Snapper case that is a published decision, but there, what was the basis for remand was a contractual forum selection clause, not jurisdictional prerequisites, not a lack of subject matter jurisdiction, which is precisely what 1447 D bars us from reviewing. My position is that it is, in fact, the analysis of a forum selection clause. That the legislature and the courts provide us at least two exceptions to the 1447 D jurisdiction, one under a substantive law, two under the idea that an arbitration agreement is a forum selection clause, and therefore, it is not subject matter jurisdiction remand and it can be reviewed. Alternatively, the backup position is WACO, and under the DeMoss analysis, the WACO test is satisfied. I would also suggest that the WACO test, which is a very short opinion. What do we do, though, with the Fifth Circuit has addressed this head on. We addressed it in a now vacated decision in Harrison, but Harrison relied on DAIA from the Fifth Circuit. And what the Fifth Circuit there said regarding WACO is because this is jurisdictional, there's no definitive determination on the merits part, and you can raise the merits below. And that's good for you, I would imagine, because I understand you want to be in arbitration, but otherwise, what it's saying is there is whatever the district court said on the merits of this thing doesn't bind anybody in any way because it's all jurisdictional. And you can raise this again in the state trial court. It's pretty rare that the federal courts say we're going to leave it to the state court to review our decision. I do see that it says that. The dissent argues differently. It says because the decision as to, you know, we've moved in the state court under the FAA saying that we have the right to arbitration. They've made a determination that this is not an agreement under the convention. And certainly, as DeMoss argued in Dehia, the plaintiff in the lower court can argue that that has a collateral estoppel effect on the lower court. I know, but if we say, as the Fifth Circuit did in Dehia, quote, when a district court makes a determination in the process of remanding a case for lack of jurisdiction, that determination is jurisdictional and can be revisited by a state court upon remand. I can't imagine the state court is going to look at that statement and say, oh, well, I don't really believe, then, this collateral estoppel will apply. Yeah, listen, I don't know that that's the case. I mean, I think the practical result is here is the plaintiff in the lower court is going to say, take the analysis that was performed by the federal court and reapply it, which is, in fact, what happened. Yeah, but the other problem is not only is it a jurisdictional determination, but it's also one that can't be appealed. If we were to send it back, if we were to say we have no jurisdiction because you can't appeal this order, there's no appellate review provided, that's a double reason why it can be revisited by the state courts and would not be conclusive on the remaining proceedings. Let me posit the notion that this should be, and according to Congress, should be immediately appealed here. This is the federal statute. Where are you getting that from, that statement? That it should be reviewed here? You said that Congress said that this should be immediately, tell me where you're getting that from. Is that from 205? You're relying on section 16 of the arbitration. Correct, 9 U.S.C. Yeah, that's what you're relying upon. But the problem with that is 1447D, you have to have an express carve out of a remand order, review of a remand order, and section 16 does not do that. What section 16 does is gives us a very specific and very immediate right to appeal. Doesn't 205, which is very relevant here, that expressly invokes the procedure for removal of causes otherwise provided by law? In other words, even if there was some tension between 16 and 1447D, doesn't 205 sort of incorporate the procedures for removal, including 1447D, into the arbitration act? I would suggest that section 16 is a specific rule, whereas 1447D is general. I understand that, and there are certainly canons dealing with the specific and the general, but what I'm talking about is the act itself incorporating the procedures for remand into the act. In other words, the act saying, yes, the procedures for removal are part of this act. And there, wouldn't that specifically incorporate or bring in 1447D as part of the analysis? To the extent that section 16 differs from 1447D, and it's specific and it deals with this specific case, I would suggest that that trumps it. I'd also take the position- But wouldn't it suggest that the rule is any different for appellate review of remand orders? I don't see where that appears. If we analyze the coin-based decision, it's very specific, and it tells us that Congress intended for us to have an immediate right to appeal for the denial, not necessarily for the granting. It goes on at some length to say that this is what we were trying to accomplish here. And if this is the circumstance where we're supposed to have an immediate appeal of a denial, the idea that we're taking it away in half the circumstances because of this other general rule, I think is incorrect. What I also think is this dovetails with the Waco analysis. We have an erroneous rule that precedes and is the necessary predicate for the second decision, the decision that wasn't made, but that we're considering reading in here. That's simply wrong. If you read the Waco analysis, it gives us these- the latter courts evaluate it as a two-part test. It has to be preceded in law and in fact, and then what it says is that it preceded in law and in fact, and then it was conclusive. But I'd suggest to you that that's a result, not necessarily a second piece of the test. What it says is- I don't see where the separation is, that Waco says that it has to lead to, but be separate from. Forget about conclusive for a second. To me, this is intrinsic to the determination of a lack of subject matter jurisdiction. It's not separate from it. It rises or falls with it. In other words, in Waco, procedurally, there was an order on the merits on something and then much later, something else happened. So there were two- there were truly separate. What the chief judge is saying, and I read it the same way, is this is a part of the same order and it really overlaps together the merits of whether there should be an order, there should have been compelling arbitration here, and whether there was jurisdiction and whether it should be remanded. So how is that separate under the Waco test? The way the test should be applied is that we do a 205 relatedness analysis, and then you determine that you have subject matter jurisdiction, and then only thereafter do you go to apply it to whether a non-signatory can or cannot enforce it. In this case, Judge Williams jumped right over the 205 relatedness test and dove into the Bautista factors, which isn't the way it's supposed to occur. You're supposed to conduct relatedness, and when that's done, you have removal jurisdiction as a federal question. And had it stopped at that point, in point of fact, you read her order, it suggests that she made a determination that the relatedness box was checked off and only sort of erred when she got into the Bautista factors. Okay. You've saved five minutes for rebuttal. Let's hear from Mr. Feldman. Thank you. Good morning, Your Honors. Jonathan Feldman on behalf of Chun Liu and with me as my co-counsel Alexis Reed. Your Honors, the underlying circumstance of this case and the allegations in this particular complaint are particularly ugly, but the issues this court must address are very straightforward. And as Your Honors have just been asking my friend at the opposing counsel's table, the issue, the threshold issue of jurisdiction, of this court's jurisdiction to be able to review the district court's order is just not there. The plain language, as Your Honors have been asking the questions, of 1447D mandates that there is no appellate review because in this instance, the district court remanded to the state court. And there's no exception that would apply and the Fifth Circuit directly addressed this argument in Tejeda. In that instance, one order from the district court judge denying the motion to compel arbitration and in that same order, the district court also remanded. And in the Fifth Circuit, in that case, they actually expressed in the majority opinion some concern about the district court's order denying the motion to compel arbitration, but nonetheless, the district court said, we cannot review it, 1447D. We've gone the other way on this, haven't we? In other words, as I understand it, and I obviously wasn't around when this happened, but around the same time, two decisions came out on this very issue, Williams and Harrison. And I can only suspect what happened, but two panels didn't know that they were deciding something on the same issue. There was some internal discussion. Williams was vacated in lieu of Harrison, but then unbeknownst to anyone, Harrison got mooted and that was vacated for separate and independent reasons. And so none of them are out there, but this is a closer call than that. Two separate panels of this court have reached the opposite conclusions on the same issue and there was dissent in Tejeda. Why is the dissent not right there? Why is the Williams panel not right that where there's this conflict here, that 1447 really doesn't apply because this is treated differently either under Waco or under a forum selection analysis. Why is this not just different? Sure. So let me address Tejeda and the dissent in that case first. So in Tejeda, your honor, I think there's two things going on there. One, the court went through the Waco analysis and decided that the Waco test had been satisfied. Respectfully, we think that analysis is incorrect for two reasons. One, as Judge Pryor just pointed out, they're intrinsic. They're tied together. They are brother and sister. They are symbiotic. The decision to remand and also to deny motion to power arbitration. They go hand in hand and that's what the majority in Tejeda pointed out. But in addition- Is that not because though that the district court just erred in its analysis? In other words, I know it treated it as jurisdictional, but is that right? Forget whether appellate review. Was that right? Well, I think it is for one simple reason, your honor, is that as the courts at the decisions have said, is that regardless of whether you're right or wrong in the underlying analysis, once you determine you don't have subject matter jurisdiction- I understand that, but put that aside. Assume 1447D doesn't exist, does the district court write here? The underlying analysis, your honor, in terms of whether or not to compel arbitration, we believe the district court did get it correct. Right, but not in terms of the jurisdictional analysis, right? I mean, calling it jurisdictional and doing it the way that it did. In other words, it might have got to the right answer, but it didn't necessarily get there in the right way. Do you agree with that? Well, I wouldn't agree with that, your honor. I do believe that the district court got there just by looking at it, whether or not it had subject matter jurisdiction under the analysis that was outlined in Otocompo 2. And that was the circuit court's decision in terms of how you look at it, both from a removal basis, and then fundamentally, did the parties actually agree to arbitrate? And when you go through that second part of the analysis, and the district court here found that the parties didn't, in fact, agree to arbitrate, therefore, there is no subject matter jurisdiction. Do you think that the state court could come to a different decision on that question? I'm sorry, your honor, can you repeat that? Do you think that the state court could come to a different decision on that question? 100%, and that's exactly what the prior questions were, is that there is nothing that binds the state court. Remember the procedural posture of this case, is that first, Mr. Wu moved to compel for arbitration in the state court. We filed a response, pointed out that we believe he waived due to certain litigation conduct, and therefore, only after that, them were moved to this court under the convention. But certainly, this court, your honor, as you pointed out, can issue language in its order and has previously done in other orders. I just want to be clear, though. I don't know if you're going to be litigating down below when this case goes back, but you're going to say, I understand the district court ruled the way it did. You are not bound by anything it said. You need to decide this anew. That's going to be your position below? 100%, because there's nothing that a district court, or let me rephrase it, there's nothing the state court is going to be bound by, a decision issued by this court, at most it's persuasive authority, but ultimately the state court judge is going to make its own determination. It's not that we would choose to write that. We kind of have to go through that analysis, don't we, to distinguish the Waco exception, don't we? I do believe so. That's correct, your honor. And so, your honor, I just want to go back to De Gea, in terms of the analysis there, and we just pointed out to it, is that it isn't preclusive. It isn't conclusive. My apologies. It isn't conclusive. Ultimately, the state court can ultimately get there. The other point in De Gea and the dissent, because it is a lengthy dissent compared to the majority decision. It is odd. I have to say, it is odd. If you're right that the district court got it right here and had to go through the jurisdictional analysis in order to reach the conclusion that it did, it's hard for me to say that that is not, that's not a binding conclusive decision. In terms of appealability, certainly if we, if the district court goes through all that and we analyze and have to go through all that, then that's part of the review. In other words, part of the jurisdictional analysis, if it's tied, if it truly is tied in and together, would seem to sort of incorporate that and be part of the decision that somehow would be a collateral estoppel or issue preclusion or res judicata or one of the preclusive effects down in the Florida state court, would it not? I think that's more of a practical impact versus from a legal standpoint. What I mean by that is this, is that when you are in front of the state court judge and you say, look, I have persuasive authority, look at the analysis that the district court judge undertook here in terms of determining these very issues, equitable estoppel, agency. I think it's more than that. Let me give you a much easier example in this case because honestly, my mind is sort of blown from how this all was litigated. But in a really easy case, let's assume that we had to litigate as part of it whether a party was diverse and we conclude based on the record, having affirmed the district court that someone actually lived in Florida and not Georgia and therefore there was no subject matter jurisdiction and sorry, you can't be in federal court. Once that's fully litigated, is the fact that that person under that record is a citizen or a resident or domiciled in Florida, assuming that becomes relevant later, not binding on a state court who has the same decision in front of it in the same case? Well, I don't know if I would say it would be bonding on them, but again, I think that's res judicata or collateral estoppel or issue preclusion or Certainly I would anticipate one would make an argument of such nature. Let me help you, Mr. Feldman. Under his hypothetical, there's been appellate review. Under what you're arguing today, there's not appellate review of this issue. And if we were to send it back, if we were dismissed the appeal, that would confirm there was no appellate review and you don't have collateral estoppel or res judicata effect where there's no jurisdiction for appellate review. And you couldn't revisit the jurisdictional determination, but the merits of something that has never been subject to appellate review about the enforceability of the arbitration agreement would be totally revisitable in state court. I agree and thank you for the assist, Your Honor. I don't disagree.  Bottom line is that that is ultimately the state court judge is going to make that call and indeed that's why they teed it up before the state court judge initially. Your Honor, if I may continue, one other aspect is that my friend at the opposing counsel's table mentioned that 9 U.S.C. 16 somehow is the more specific versus the general that's within 144070, and we disagree with that for one simple reason, it's 9 U.S.C. 16 requires that there be subject matter jurisdiction. And in this instance, the district court judge found that there was no subject matter jurisdiction. So the condition precedent to trigger 9 U.S.C. 16 is implicated and he also dealt with this front and center in the majority opinion in the case the court mentioned or argued or laid out, I'm sorry, that in the end to allow 9 U.S.C. 16 to circumvent 144070 would not be appropriate. And so that argument was also addressed in Tahirah. That may be, but wouldn't, this would be the same result in every case, right, that's in a similar posture. And so it's true that it would be determinative in a set of cases, but don't you have that problem either way, right, like either you have jurisdiction to review these determinations or you don't. So why doesn't the specific versus general play a role? Because first of all, I don't think it's, the act incorporates the remand procedures itself. And so 144070 is pulled into this. And so therefore, you have to look at 144070, you have to give it effect because otherwise you're just effectively pushing it out to the side. I agree, Judge Luck, there is some tension here between 9 U.S.C. 16 and 144070. I don't think you have to harmonize them necessarily. There's a ceasefire. I guess what I'm saying though is that aren't you pushing one off to the side either way, right? No matter which way we go, doesn't one become irrelevant in a large swath of cases? In some cases, yes, I would agree with that statement. But there's other cases where it wouldn't become irrelevant. So in other words, there's a subset of cases such as a case of this nature and this procedural 144070 would be the appropriate statute to look to in terms of the outcome. There'll be other cases where 9 U.S.C. 16, Section 16, this court would have appellate review to review an order denying a motion to compel arbitration by the district court. What's the best practice for a district court in this situation? It seems to me that they probably shouldn't be a joint order where you're ruling on the remand. Is it just decide the remand issue and whatever jurisdictional points need to be raised within that and then leave it at that? I think the only problem with that, Your Honor, is that to do that motion of remand analysis effectively you're going to go through the Batista factors themselves, right? So you're going to have to deal with it no matter what, whether you title it order denying motion or order granting motion of remand and then every other order is denied as moot versus first addressing to it the motion to compel arbitration, denying that, and then granting the motion. But that's what's putting this in this box. In other words, the first one you just said doesn't get us here because the court hasn't ruled in any way on it. It's just ruled on the remand issue and 1447D seems to take care of that. But by ruling on denying the motion to compel and then as a result of that remanding because of lack of jurisdictional prerequisites, you now have two things being done in an order and two separate jurisdictional statutes that seem to apply differently to different orders. So I actually think that Otokampu 2 deals with the exact situation because Otokampu 2 says if you're going to file a motion for remand, the analysis is cursory, right? You just look at do you have the four Batista factors and you look at it on a very cursory level is there some type of, is this litigation related to? And it's a very cursory analysis. It's the second part of the analysis when there's a motion to compel arbitration. That's where you get into a remote, a more robust review of the Batista factors. And we stipulated in this case three of the factors are satisfied. It's the first factor, whether or not there's an agreement of writing between the parties agreeing to arbitrate. And so that's why when you go to your scenario, well, you just do it through a motion of remand. Otokampu 2 gives you the solution there, which is it's going to be a very cursory review and in all likelihood in that situation you say, nope, removal jurisdiction is apparent here. So we now have to decide the issue of whether or not we can compel arbitration. I mean, at the end of the day, though, if 1447 D bars our review, it doesn't matter whether the district court did it right or not because the Supreme Court has said that that bar applies no matter how plain the legal error in the jurisdictional analysis, isn't that right? That's correct. It could help district courts, you know, deal with this situation. This isn't an infrequent thing. We know this because we have at least five or six cases that seem to have the same procedural posture. But isn't that what you've just suggested that what should have happened here? In other words, there's a cursory, a cursory review should have been done. And if it sort of smells right, then you go through and do the rest of it and decide. And I understand at the end of the day, it may have been no jurisdiction at the end of it, but the cursory review seems to be the right way to go, does it not? I agree. And I believe that's what the district court judge did here and what happened. Let me let me let me be more specific. Is that it seemed to me some pretty deep findings, did it not? I mean, it went into the weeds of whether this existed or not. This was seemed to be beyond a cursory review, at least my look. Well, I believe what the district court judge did is just jumped over that initial removal review and said what into Oto Campos to second part of the analysis, which is the more robust analysis. And what the district court also did, which was Oto Campos three, the Supreme Court's decision were in Oto Campos three, the Supreme Court said, listen, a non-signatory can still raise certain arguments as to compel arbitration, even though they're not a signatory, they can raise equitable estoppel agency and whatnot. And so that's what went back. And so in this instance, our trial court actually went through that additional analysis that was ordered in Oto Campos three. So I would just suggest, Your Honor, is that in terms of addressing the motion to compel arbitration head on, the court went through that rigorous analysis that Oto Campos three required. Unless Your Honor's having more questions, that's the extent of my argument. Thank you. Thank you, Mr. Feldman. Mr. Barakat, you've got five minutes. There doesn't seem to be any great debate that the analysis was incorrect. Under Oto Campos, the court can't make the determination that because you're a non-signatory to the agreement, you can't compel arbitration. The only question is whether making a subject matter determination under 1447D would whitewash that error. If we read Coinbase, we know the intention is to provide an immediate stay pending an   And so what should have occurred in this case is . . . You agree that there can be errors in subject matter jurisdiction determinations that produce a remand order that are plainly wrong that we cannot review, right? So maybe the district court's wrong, but that might not matter, right? In this case, I'm suggesting it does matter because the court does make two rulings. The second part of a ruling isn't identified as 1447D and the court has options, has been that don't invoke 1447D because 1447D has to be read in conjunction with 1447C. And so sort of taking the opportunity to fix the order to prevent the review seems wrong, but more importantly, my understanding of the congressional intent and the court's rulings on it is that this is supposed to be immediately repealable and should be stayed. And so if Coinbase tells us that, there has to be an opportunity between the two orders to do so. And so it is my position that Congress intended us to be able to appeal this. They make that very, very clear and that this court should support that intent. Thank you. Okay. Thank you. We'll move to the last case.